UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

---------------------------------------------------------------x
SWETHA NEERUKONDA, as the
Natural Mother and Legal Guardian of AV,
an infant,

        Plaintiff,    Civil Action No.:

 -against-          COMPLAINT &
               JURY TRIAL DEMAND

QATAR AIRWAYS Q.C.S.C.,

      Defendant.
---------------------------------------------------------------x

The Plaintiff, SWETHA NEERUKONDA, as the Natural Mother and Legal Guardian of AV, an infant, by her attorneys, ABRAMS LANDAU, LTD. and BOHRER & LUKEMAN, PLLC., for her complaint against Defendant, QATAR AIRWAYS Q.C.S.C. (hereinafter "QATAR" or "Defendant"), alleges the following upon information and belief:

## PARTIES, JURISDICTION, AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sec. 1331, insofar as a federal question is presented pursuant to the Convention for the Unification of Certain Rules for International Carriage by Air done at Montreal on May 28, 1999 (the "Montreal Convention").

2. At all material times, Defendant, was present and conducted substantial business operations in the Commonwealth of Virgina, including through the operation of flights on its own aircraft, code share flights, interline flights and sales of tickets to customers, all directly and indirectly, for international carriage.

3. Alternatively, personal jurisdiction over Defendant is appropriate under Fed. R. Civ. P. Rule 4(k)(2) as this matter arises under federal law, that is, a multilateral treaty obligation to which the United States is a signatory, and QATAR, a foreign entity with its principal place of business in Doha Qatar, is not subject to jurisdiction in any state courts of general jurisdiction.

4. Exercise of personal jurisdiction under Fed. R. Civ. P. Rule 4(k)(2) as to Defendant is consistent with due process, in particular the Fifth Amendment to the United States Constitution, as QATAR has sufficient minimum contacts with the United States as a

whole in that it purposefully avails itself of the American market by each or all of the following:

    a. Operates in the United States under the authority of a Foreign Air Carrier Permit (as amended) issued by the United States Department of Transportation;

    b. Directly operates multiple daily flights on its own aircraft to and from the United States including Dulles International airport in Virginia;

    c. Transports thousands of passengers daily by way of air travel aboard its own aircraft to and from the United States and Virginia;

    d. Engages in the direct sales of airline ticket to U.S. citizens and residents in the United States through its website;

    e. Engages in the direct and indirect sale of airline tickets to U.S. citizens and residents through code sharing, interlining and other agreements;

    f. Employs flight and administrative individuals in the United States and the State of Virginia;

    g. Owns and/or leases real property in the United States and in Virginia;

    h. Transacts business daily including but not limited to the purchase of aviation fuel, passenger meals, and other flight related items in Virginia totaling in the tens of millions of dollars annually;

    i. Maintains cargo offices in Virginia which ship and receive freight daily totaling in the tens of millions of dollars annually.

5. Plaintiff's claims arise out of Defendant's contacts with the United States as it was the actual carrier that transported Plaintiff and her infant AV, and that the accident — the subject matter of this lawsuit — occurred while Plaintiff was en-route aboard an aircraft which departed from the Commonwealth of Virginia.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. Sec. 1391, in that Defendant has offices and transacts business within this judicial district, namely at the international terminal of Washington Dulles International Airport, Sterling, Virginia (IAD).

7. Venue is proper in this judicial district pursuant to 28 U.S.C. Sec. 1391, in that a substantial part of the events or omissions giving rise to the claim arose out of Defendant's contacts with the judicial district.

**FACTUAL ALLEGATIONS AND MONTREAL CONVENTION**

8. Plaintiff, SWETHA NEERUKONDA, is the mother and legal guardian of AV, an infant and resides with her infant in Apex, North Carolina.

9. At the time of the events set forth herein, AV was three years old.

10. Defendant is a foreign corporation authorized to do business in the Commonwealth of Virginia.

11. Defendant was and is a common carrier engaged in the business of transporting passengers for hire by air.

12. As part of its business as a common carrier of passengers by air, Defendant operates regularly scheduled flights to and from Washington Dulles International Airport, Sterling, Virginia (IAD).

13. The Plaintiff's travel pursuant to the contract of carriage which forms the basis for this cause of action originated from and concluded in the Commonwealth of Virginia.

14. On or about April 9-10, 2025, Defendant QATAR operated and controlled a certain aircraft, designated as Qatar Flight QR 710 from Washington Dulles International Airport, Sterling, Virginia (IAD) to Hamad International Airport, Doha, Qatar (DOH) to ("the subject flight").

15. On or about April 9-10, 2025, Plaintiff and her infant were fare-paying passengers lawfully travelling onboard the subject flight.

16. On or about April 9-10, 2025, the subject flight was conducted on an aircraft owned, leased, operated, staffed, or otherwise controlled by Defendant.

17. On or about April 9-10, 2025, Defendant employed a cabin crew aboard the subject flight who were responsible for the safe and secure operation of its flights as well as the safety and well-being of its passengers.

18. On or about April 9-10, 2025, Defendant was responsible for the training, management, supervision, and/or control of its cabin crew aboard the subject flight, including but not limited to the crew's adherence to standard safety policies and protocol.

19. One of said cabin crew's safety responsibilities was to be aware of the seriousness of, and respond appropriately when, advised of a passenger's food allergy.

20. Thus, once cabin crew members were placed on notice of a passenger's food allergy, they had a duty of care to ensure that food items containing such allergens, or their ingredients not be served to that passenger.

21. At all times relevant herein, Plaintiff's infant AV suffered from a severe allergy to dairy and nuts.

22. Both prior to, and during the subject flight, Plaintiff informed one or more of Defendant's employees, agents, contractors, and/or servants, that AV suffered from an allergy to dairy and nuts.

23. As such, Defendant QATAR, its employees, agents, contractors, and/or servants were aware, and had actual notice, that Plaintiff's infant AV suffered from a potentially life-threatening food allergy.

24. During the course of the subject flight, Plaintiff needed to use the lavatory at which time a female QATAR flight attendant agreed to watch AV.

25. Prior to leaving AV in the care of said flight attendant, Plaintiff once again reiterated that AV suffered from allergies to dairy and nuts, which said flight attendant acknowledged.

26. When Plaintiff returned from the lavatory, she shockingly found the QATAR flight attendant feeding AV a snack containing dairy.

27. Plaintiff confronted said QATAR flight attendant who responded by admitting that she had fed the within a snack to the child, and whom mocked and mitigated Plaintiff's concerns.

28. Within a short period, AV began to suffer severe anaphylaxis as her mental status and vital signs declined.

29. Plaintiff administered an EpiPen injection to AV aboard the flight and despite same, no PA announcement was made by cabin crew members, in violation of its own practices and procedures.

30. Moreover, when Plaintiff sought to share information with a fellow passenger whom she believed to be a witness, a QATAR flight attendant intervened, claiming that was in violation of the airline's policy.

31. Following landing, AV suffered another severe reaction and was admitted to a hospital for emergency treatment.

32. In so negligently, carelessly, and recklessly serving a known allergen to AV, Defendant breached its duty of care and violated its own practices and procedures.

33. AV's anaphylactic reaction and the consequential injuries suffered as a result thereof, were the result of an accident, or an unexpected or unusual event or occurrence external to the AV, and not from her internal reaction to the normal operation of the

aircraft.

34. As a result of said accident, AV was injured.

35. As a result of said accident, AV was seriously injured.

36. As a result of said accident, AV suffered great pain, agony and mental anguish, and in the future will continue to suffer from same.

37. As a result of said accident, AV was required to undergo painful emergency medical treatment.

38. As a result of said accident, AV was deprived of her enjoyment of life, pursuits and interests and believes that in the future, she shall continue to be deprived of same.

39. As a result of said accident, Plaintiff also suffered both economic and non-economic loss.

40. As a result of the foregoing, Defendant is liable to pay full, fair and reasonable damages to Plaintiff, individually, and in her capacity as the natural mother and legal guardian of AV, pursuant to the Montreal Convention.

41. Pursuant to Article 21 of the Montreal Convention, Defendant cannot meet its burden of proving that its negligence did not cause or contribute to the accident, and to the resultant injuries suffered by AV.

42. Pursuant to Article 21 of the Montreal Convention, Defendant cannot meet its burden of proving that Plaintiff's and her infant AV's injuries were caused solely by the acts of third parties.

43. As a result thereof, Defendant cannot limit its liability to the Plaintiff, or to AV.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, SWETHA NEERUKONDA, individually, and as the natural mother and legal guardian of AV, an infant, demands judgment against Defendant, QATAR AIRWAYS Q.C.S.C., in the amount of $5,000,000.00, with pre- and post-judgment interest, costs and disbursements, as allowed by law. Plaintiff demands a jury trial.

Dated: October 31, 2025

ABRAMS LANDAU, LTD.

_____
By: Douglas Landau, Esq.

Virginia Bar No.:25241
797 Center Street
Herndon, VA 20170
(703)796-9555
e-mail: doug@landaulawshop.com


**BOHRER & LUKEMAN, PLLC**
Abram I. Bohrer, Esq.
5 Columbus Circle, Suite 1501
New York, New York 10019
Tel. (212) 406-4232
abe@flightinjury.com
*Forthcoming pro hac vice application*

*Attorneys for Plaintiff*